SUCESIÓN DE CELESTINO ANDRADES, compuesta de MARTÍN, ALEJANDRINA, MARGOT, DOLORES, MATILDE Y SINECIA ANDRADES, peticionarias y apeladas, *v.* JOSÉ SOSA OLIVA, demandado y apelante.

No. 5507.—*Sometido:* Febrero 17, 1932. *Resuelto:* Noviembre 17, 1933.

*J. H. Brown, C. Ruiz Nazario* y *G. E. González,* abogados del apelante; *O. B. Frazer* y *R. Castro Fernández,* abogados de las apeladas.

EL JUEZ ASOCIADO SEÑOR ALDREY, emitió la opinión del tribunal.

Una demanda de tercería fué declarada sin lugar por sentencia que contiene ciertos pronunciamientos contra el tercerista y sus fiadores. Cuando el embargante de la propiedad objeto de la tercería quiso hacer cumplir esa sentencia en bienes de uno de los fiadores se le prohibió en un procedimiento de *injunction* que hiciera tal cosa, y contra esta sentencia se interpuso la presente apelación.

En pleito seguido por José Sosa Oliva contra la sociedad civil Rodríguez Hnos. y contra los dos socios de ella, obtuvo sentencia a su favor por la cantidad de $2,109.45 y por las costas. Siendo firme ese fallo fué anunciada en subasta para su cumplimiento la venta de todo el derecho, título, interés y participación que el demandado José V. Rodríguez tuviese en otra sociedad civil de la que formaba parte, nombrada López Rodríguez & Cía., pero esa subasta fué suspendida por haber interpuesto la sociedad López Rodríguez & Cía. una tercería reclamando el derecho anunciado en venta como de su exclusiva propiedad y haber prestado fianza en unión de Celestino Andrades y de Andrés López como fiadores en cantidad de $6,000, por haber sido tasado por el márshal el derecho reclamado en $3,000, sin que los fiadores se comprometiesen a pagar costas. Tramitada esa tercería recayó

sentencia declarándola sin lugar con imposición de las costas a la tercerista y a sus fiadores. Fué embargada entonces una finca del fiador Andrades, valorada en $10,000, para responder a Sosa Oliva de la cantidad de $2,109.45 más $500 para costas. Esa sentencia fué notificada solamente a López Rodríguez & Cía., lo mismo que el memorándum de costas que fué presentado y aprobado por la corte en cuanto a la cantidad de $266.50, por la cual y por los $2,109.45 fué librada orden de ejecución y por ellas anunciada en subasta la finca de Andrades. Acudió entonces ese fiador a la corte de distrito solicitando que anulase el embargo de su finca y la orden para su venta porque no había sido notificado de la sentencia que lo condena al pago de costas, porque sin haber sido condenado a pagar cantidad alguna a Sosa Oliva se quiere vender su finca para que Sosa cobre los $2,109.45 de la sentencia que obtuvo en su pleito contra Rodríguez Hnos., porque en su fianza no se obligó a pagar costas y porque no ha sido requerido para que consigne el montante de ellas. Esa solicitud fué negada y entonces presentó en este Tribunal Supremo una petición en la que exponiendo substancialmente lo mismo que en la moción de nulidad referida interesó el libramiento de un auto de *certiorari* para la revisión de las actuaciones mencionadas, pero fué rechazada en una resolución que dijo "No ha lugar," y en igual forma fué desestimada su solicitud de que este tribunal reconsiderase esa resolución. Después de esto, habiendo muerto Celestino Andrades, sus herederos radicaron en la corte de distrito demanda de *injunction* exponiendo también los hechos ya relatados con súplica de que se prohibiese a José Sosa Oliva hacer cumplir la sentencia de tercería y cobrar los $2,109.45 y las costas con la venta de la finca embargada al fiador Andrades. Con vista de esa demanda la corte dictó una orden de entredicho; después de oír al demandante y al demandado Sosa decretó un *injunction* provisional; y finalmente, con audiencia de las partes, dictó la sentencia que motiva esta apelación.

En los dos primeros motivos de su recurso dice

el apelante que la corte inferior cometió error al no sostener que los hechos alegados en la solicitud o demanda de *injunction* son insuficientes para autorizar la concesión del recurso que solicita porque si los apelados tienen derecho a que se les notifique la sentencia de tercería y los procedimientos posteriores, tienen el camino expedito para darse por notificados y apelar para obtener la revisión por ese remedio ordinario, que es suficientemente rápido y eficaz, y que si no tienen derecho a tal notificación, entonces no procede el *injunction* porque la notificación hecha al tercerista constituyó suficiente notificación a sus fiadores. También dice que la alegación de que los peticionarios sufrieron daños irreparables no es suficiente porque no expresa los hechos en que tal alegación se funda. Podemos resolver con los anteriores el séptimo motivo, fundado en que fué error resolver que procedía en este caso la expedición del auto para impedir una multiplicidad de procedimientos judiciales.

La ley de tercería (Estatutos Revisados, pág. 889) dispone que siempre que un márshal, u otro agente judicial, procediere a cumplimentar una orden de ejecución, embargo, o cualquiera otra orden contra alguna propiedad mueble, y dicha propiedad, o cualquiera parte de ella, fuere reclamada por un tercero, éste o su mandatario o abogado, podrá prestar juramento por escrito ante cualquier funcionario autorizado para tomar juramentos haciendo constar que dicha reclamación se hace de buena fe, y presentarlo al agente encargado de cumplimentar la orden de ejecución o embargo. Por la sección segunda se dispone que el reclamante constituirá y presentará una fianza con dos fiadores por el doble de la cantidad en que el agente judicial tasara el objeto de la reclamación y que aprobada la fianza por el agente judicial se entregará la propiedad al reclamante, que será considerada en *custodia legis*. En la sección tercera se dice que la fianza se constituirá con la condición de que si el reclamante no logra justificar su derecho a la propiedad, devolverá ésta al agente que hubiere actuado en el embargo en tan buena condición

como la recibió y de que satisfará el valor razonable del uso, alquiler, incremento y productos de la misma, desde la fecha de la fianza; o que si dejare de devolver dicha propiedad y pagar por el uso, alquiler, incremento y productos de la misma, satisfará al demandante el valor de dicha propiedad, con más el interés legal de la misma desde la fecha de la fianza, así como todos los daños y costas a que fuere condenado. Según otra sección de la misma ley el reclamante deberá comparecer dentro de cierto tiempo para sostener su reclamación; y según la 14, en todos los casos en que el reclamante de una propiedad bajo las disposiciones de esa ley dejare de probar su derecho a ella se dictará sentencia en contra de él y de sus fiadores por el valor de la propiedad, con interés legal sobre el mismo desde la fecha de la fianza.

En 2 R.C.L., pág. 55, párrafo 35, se dice, citando sentencias, que la clase más numerosa de personas que no son partes en un pleito y que reclaman el derecho de apelar de acuerdo con los estatutos como personas agraviadas son los fiadores en fianzas oficiales; y que la mayoría de las autoridades sostienen el derecho de esas personas para apelar como tales fiadores de una sentencia contra su principal por la teoría de que tales fiadores, en ausencia de fraude o colusión, están obligadas por un fallo contra su principal y son partes agraviadas. Ese derecho de apelación surge aun más claro en las sentencias de tercerías por disponer en ellas la ley que se condene al principal obligado en la fianza y también a sus fiadores a pagar el valor de la propiedad mueble reclamada por el tercerista, cuando éste ha dejado de probar su reclamación. Esa condena contra los fiadores, que no han sido partes en la tercería, es una responsabilidad que se les impone por la sentencia y como agraviados por ésta tienen el derecho de apelar. En el caso presente la sentencia no condenó al tercerista y a los fiadores a pagar el valor de la propiedad que se reclamaba, como dispone la ley, pero condenó a los fiadores a pagar las costas de la tercería, sin mandato expreso de la ley y sin que los fiadores se hubiesen comprometido en

la fianza a satisfacerlas, y habiendo sido agraviados así en ese particular por la sentencia, tenían derecho a que fuera revisada en apelación. Los fiadores no fueron partes en el procedimiento de tercería pero el hecho de haber sido condenados los convirtió en partes perjudicadas a quienes la sentencia debió ser notificada por el secretario de acuerdo con el Código de Enjuiciamiento Civil vigente por si querían establecer recurso de apelación y para que si no lo ejercitaban quedase firme contra ellos y pudiera ejecutarse en sus bienes; y aunque ellos pudieran apelar dándose por notificados de la sentencia, como dice el apelante, no tienen el deber legal de hacerlo. La sentencia no les fué notificada.

■ El hecho de que los fiadores tuvieran y aun tengan en esta clase de procedimiento el recurso de apelación no es obstáculo que impida necesariamente el libramiento de un auto de *injunction* pues, como hemos declarado en varias ocasiones, el recurso ordinario de apelación no es siempre adecuado, rápido y eficaz. En el recurso de apelación sólo podría discutirse y resolverse si los fiadores fueron propia o injustamente condenados al pago de las costas; pero embargados bienes del fiador Andrades y habiendo sido anunciada su venta en subasta para hacer efectiva una cantidad determinada de dinero para costas sin que en la sentencia se fijase tal cantidad sino en un procedimiento posterior en el que no se le dió intervención al fiador a quien se quiere cobrar, y tratándose de ejecutar su finca para que pague también $2,109.45 sin haber sido condenado a satisfacer esa cantidad, no tenemos duda de que la demanda de *injunction* es procedente a pesar del derecho de apelación que tenía la sucesión apelada.

La alegación del apelante respecto a que la demanda de *injunction* no expresa los hechos que demuestren que la Sucesión Andrades recibirá perjuicios irreparables no es sostenible, porque de la petición aparece que se trata de vender su finca para pagar cantidades a que no ha sido condenada; venta que de ocurrir le causará indudablemente serios per-

juicios pues le privará de los beneficios de su propiedad, ya que aunque podría recobrarlos en otro pleito estaría expuesta a perder los productos y beneficios de su propiedad porque aunque en la actualidad el apelante tiene bienes para responder de ellos, no puede preverse lo que ocurrirá a la terminación del litigio. Y si la finca es comprada por tercera persona protegida por la buena fe de su compra en subasta judicial, entonces la situación sería más complicada para la Sucn. Andrades. Lo expuesto demuestra también que el presente *injunction* trata de evitar una multiplicidad de pleitos. Hay otro motivo de error que implícitamente queda resuelto por lo antes expresado, a saber, según el sexto, que la corte inferior cometió error al dictar la sentencia apelada basada en la falta de notificación a Andrades de la sentencia de tercería y de las órdenes posteriores y en irregularidades en dicho pleito que pudieron ser corregidas en el curso ordinario de los procedimientos.

En el tercer motivo se dice que fué error de la corte sentenciadora resolver que las cuestiones envueltas en este caso habían sido previamente determinadas y decididas en el recurso de *certiorari* que Celestino Andrades presentó en este Tribunal Supremo. Es cierto que las cuestiones alegadas en la mencionada solicitud de *certiorari* son substancialmente iguales a las de la petición de nulidad que Andrades presentó ante la corte de distrito y las mismas de la demanda de *injunction* de su sucesión y que en la solicitud de *certiorari* se alegó la cuestión de la falta de notificación a Andrades de la sentencia de tercería. Quizá nuestra resolución de "No ha lugar" fué motivada porque Andrades podía apelar de la sentencia, según hemos dicho al principio, pero también hemos declarado antes que a pesar de ese derecho de apelación y por las circunstancias de este caso era procedente el auto de *injunction*. De todos modos, nuestra resolución en el *certiorari* y nuestra negativa a reconsiderarla no resolvió explícitamente cuestión alguna contra Andrades. La concesión de un auto de *certiorari* es discrecional.

■ El cuarto motivo de error alegado no tiene importancia, pues si la orden definitiva de *injunction* es procedente no deberá ser revocada porque al conceder la corte inferior el auto provisional de *injunction* no considerara las cuestiones de derecho planteadas por el demandado, tanto más cuanto que esa resolución no fué apelada.

Los dos últimos motivos del recurso se fundan en que la sentencia definitiva de *injunction* es contraria a la ley y a los hechos probados. Ambos están comprendidos en los razonamientos que hemos expuesto. En uno de ellos se insiste en que la sentencia de tercería no podía ser apelada por Andrades por no ser parte en dicho procedimiento. Hemos dicho al principio que al condenar la sentencia a Andrades lo hizo parte. De sostenerse esa conclusión del apelante procedería también el *injunction* en cuestión.

*La sentencia apelada debe ser confirmada.*
El Juez Asociado Señor Córdova Dávila no intervino.