[1] This is a partition and an accounting case. Plaintiff (appellant) filed his petition in the Circuit Court of Cedar County, asking the trial court to determine the interest of plaintiff in a certain stock for drugs in El Dorado Springs, Missouri, and to partition the same, and, if the same could not be partitioned, to sell the same and divide the proceeds between plaintiff and defendant.
[2] It seems, from the petition, that the stock of drugs was of little value when plaintiff became manager of the store in February, 1943. He alleges that thereafter he paid bills, outstanding against said store, amounting to $465, and plaintiff so managed said store that the stock of drugs therein became reasonably worth $9,000 in August, 1946, when the defendant wrongfully "forced plaintiff from the management and operation of said store."
[3] In defendant's (respondent's amended answer, he admitted the management of said drug store by plaintiff during the times alleged, and said that plaintiff was employed by him at a salary of $100 per month, with $50 per month to defendant for use of defendant's fixtures; and defendant further filed a counterclaim, charging that the plaintiff owed him a large amount of money, after allowing plaintiff $100 a month as manager and *Page 375 
paying defendant $50 a month for use of his fixtures.
[4] Under such pleadings the questions of fact in the case were:
[5] Firstly, Whether or not plaintiff had an interest in such drug store, other than the payments due to him as manager, which payments were admitted; and
[6] Secondly, Whether or not the profits of such drug store during the period of time plaintiff was manager thereof, exceeded such payments, and, if so, how much?
[7] In December, 1946, one Joe W. Collins was appointed by the trial court as a referee in the case, and thereafter heard testimony as to whether or not plaintiff had any interest in the drug store, in addition to his salary as manager. On January 6, 1947, the referee reported to the trial court that he found that plaintiff had no interest in the drug store, other than his salary as manager thereof.
[8] To this report plaintiff filed his exceptions. Whether or not such exceptions were ever passed upon by the trial court, before the referee's final judgment, does not appear from the transcript before us. Apparently the referee proceeded, after his first report, to take further testimony.
[9] Before filing his last report, and subsequently to his first report, the referee heard the testimony of a large number of witnesses as to the value of the stock of drugs in February, 1943, and in August, 1946, and examined a great number of exhibits. Some of the exhibits are shown to have been received in evidence. None of such exhibits accompany the transcript before us.
[10] To make it certain as to what the referee held in his first report, on January 6, 1947, it seems necessary that we quote part of it as follows: "Upon the evidence thus adduced I find the facts to be that plaintiff does not own an interest in the stock of the drug store in question, but that on the evidence of defendant himself the plaintiff is entitled to one-half the net profits of the drug store, if there be any profits after paying plaintiff the sum of $100.00 and the defendant $50.00 per month or a showing be made that they have already received same for the period agreed upon. It is the opinion of the referee that a full and complete hearing on the matter of an accounting between the parties will have to be had in order to determine the interest of plaintiff and defendant."
[11] On October 1, 1948, the referee filed what he called the "Second Report of Referee," and included therein the following:
[12] "Upon the evidence thus adduced I find the facts and law to be:
[13] "First, that both parties are seeking an accounting and asking the Court to make a full and true account; that the burden is on each to maintain his claim; that from the evidence and voluminous records and exhibits in the case I find that a true account cannot be reached and I recommend to the Court the dismissal of plaintiff's action and defendant's counterclaim and that costs be adjudged against plaintiff."
[14] To this report the plaintiff filed his exceptions.
[15] The referee was in error in saying that both parties were seeking an accounting. It is clear, from our reference to the petition and answer, that only defendant was seeking an accounting. Among other exceptions to this report, plaintiff said: "He has not made an accounting between the parties." As above stated, we think the referee was in error in so reporting to the trial court.
[16] On December 29, 1948, the trial court made the following entry in its record: "Second report of Referee is approved. Plaintiff's Exceptions to referee's report is overruled. Petition dismissed. Defendant's Counter-claim dismissed. Cost against plaintiff. Referee allowed $100.00 fee as cost in case."
[17] To this judgment plaintiff filed his motion for new trial, and, among other things, stated that the referee failed to make an accounting between the parties.
[18] When such exceptions were overruled, the plaintiff filed his notice of appeal, as follows: "Notice is hereby given that *Page 376 
J.C. Brannan plaintiff above named, hereby appeals to the Springfield Court of Appeals from the final judgment entered in this action on the 29th day of December, 1948."
[19] The plaintiff has filed his brief in this Court, in which he assigns as error that, "The referee failed to make an accounting between the parties." The assignment of error on the part of the referee, and not of the trial court, is waived by us.
[20] An examination of the petition shows that nowhere therein did plaintiff ask the trial court to take an accounting between plaintiff and defendant, to ascertain whether or not plaintiff had so managed the stock of drugs that he was entitled to an interest therein, regardless of the claim, in his petition, that a one-half interest therein was sold to him by defendant originally. The taking of an account was only raised in the answer and counterclaim. Defendant did not appeal.
[21] A party to a law suit is not entitled to an appeal from a judgment therein because of a decision in favor of the other party. In 4 C.J.S., Appeal and Error, § 183, it is said: "A party, therefore, cannot appeal from a decision which is correct so far as his interests are concerned, or which does not affect his interests, however erroneous and prejudicial it may be to the rights and interests of some other party or person".
[22] In Thomas v. Elliott, 215 Mo. 598, 114 S.W. 987, 989, it was said: "The right of appeal is given by statute, and, unless the person who feels aggrieved by the action of the trial court is given the right of appeal by the statute, he has no such right."
[23] Plaintiff was given no right of appeal from the action of the trial court, on defendant's counterclaim, by Sections 1081 to 1084, inclusive, of the 1939 Statutes of Missouri, Mo.R.S.A. §§ 1081-1084, nor by Section 126, page 390 of the Laws of Missouri for 1943, Mo.R.S.A. § 847.126.
[24] The only party who could complain of the failure of the referee and the court to take an accounting, under this record, was the defendant, who asked for such accounting in his counterclaim, and did not appeal. The plaintiff did not ask for such an accounting in his petition, and could not appeal for failure of the trial court to take such an accounting.
[25] We feel that the only question of fact and proof thereof that we can consider in this case is the allegation in plaintiff's petition that he was the absolute owner of a one-half interest in such stock of drugs. In both the original and second report, the referee found that plaintiff had no interest in the stock of drugs, other than his admitted salary of $100 per month as manager, and the trial court agreed with the referee, and we must agree with the trial court in that respect.
[26] So far as the evidence went, the referee and the trial court had a right to hold that plaintiff had no interest in the stock of drugs, other than his salary as manager. The evidence offered on this subject was not at all convincing. Plaintiff's attorneys, and others, testified to statements of defendant that plaintiff had such an absolute interest. But the evidence of plaintiff himself, flatly contradicted by defendant, lacked much of being at all satisfactory on that point.
[27] The testimony of defendant was that plaintiff had no interest other than his salary as manager. Conflict in the evidence was thereby engendered. This is an equity case. It is true that, in such a case, an appellate court can come to its own conclusion as to what the evidence shows. Where such evidence is unconvincing and not overwhelming, the finding of the trial court will not be disturbed on appeal. Laws of Missouri, 1943, Section 114(d), page 388, Mo.R.S.A. § 114(d); Scheer v. Gerleman, Mo.Sup., 221 S.W.2d 875, loc. cit. 880; Thomas v. Milfelt, Mo.App., 222 S.W.2d 359; both of the latter cases being too recently decided to have been officially reported.
[28] We cannot find that the plaintiff ever had an interest in the stock of drugs, other than his salary as manager, and, as plaintiff cannot appeal from a judgment failing to take *Page 377 
an account as asked in defendant's counterclaim, there is nothing left for this Court to do, other than to affirm the judgment of the trial court.
[29] It is so ordered.
[30] VANDEVENTER, P. J., and McDOWELL, J., concur.